We'll take the case under advisement. All right. Our third case for this morning's arguments is Tchougoue against Attorney General Barr. Good morning, Your Honor. Mr. Seyfried. May it please the Court, my name is Brian Seyfried, and I represent the petitioner, Mr. Lovert Tchougoue, a 22-year-old Anglophone native and citizen of Cameroon who has been in detention with immigration since he entered for one and a half years now. Your Honors, we would ask that this Court remand the incident case and grant the petition for review on three grounds. First, finding that the Board of Immigration Appeals impermissibly used a higher standard to define and analyze the term persecution. Second, that substantial evidence compels a finding that Mr. Tchougoue was subjected to past persecution. And third, that substantial evidence compels a conclusion that Mr. Tchougoue has a well-founded fear of future persecution. So let me take your first point. I understand. Judge Rovert, go ahead. Thank you. You know, the immigration judge discredited Mr. Tchougoue. Tchougoue. Tchougoue. Tchougoue. Sorry. Both on the purported inconsistencies and lack of detail in his testimony and for lack of corroboration. Now, I don't see much, if anything, in your brief on the corroboration point. So I would appreciate it if you could address that for just a moment. Thank you, Your Honor. And I certainly do want to address that point. We would make the argument that the immigration judge nor the Board of Immigration Appeals ever pointed to what type of corroborative evidence they had wanted from Mr. Tchougoue. And moreover, they never gave Mr. Tchougoue an opportunity to explain why such evidence would not have been reasonably attainable. So we believe that, you know, it was clearly something that the immigration judge and the Board of Immigration Appeals erred in in finding that ultimately they had wanted additional corroborative evidence from a petitioner to support a well-founded fear of future persecution. Mr. Tchougoue was in detention at that time, and clearly to obtain evidence, to research country conditions also was very difficult for him. And at no point was he given the opportunity to explain, you know, why he was not able to reasonably obtain such evidence. And the immigration judge or the Board of Immigration Appeals never explained what type of evidence they had wanted to see. So we believe that there was error in that sense, Your Honors. So what I wanted you to turn to, as I understand your argument, as a matter of law, the Board of Immigration Appeals makes a mistake if it uses the Federal Court of Appeals standard of review where we would have to overcome an administrative finding as opposed to its own standard of review where it is the reviewer of the immigration judge's findings. Now, they give some deference to fact findings and credibility, but it's different. But I'm not 100% sure the Board made that mistake. They do say, assuming the respondent's credibility, so they're trying to take that off the table, we conclude that his past experiences in Cameroon, while distinctly unpleasant, did not reach the level of persecution. Well, that statement doesn't come packaged with any standard of review. It sounds to me like they're looking at the record and they say, you know, not like anybody wanted these things to happen, but they're not so awful as to be persecution. Then they cite a couple of cases from this court, all of which give factual examples where we didn't find persecution. But suppose they hadn't cited those cases. Suppose they had just said, you know, we conclude that this was distinctly unpleasant, but it's not persecution. What is wrong with that assessment? I mean, how can we say that they somehow got it wrong when they assessed it that way? Yes, Your Honor. And I think that, you know, our point is specifically that, that in administrative record page four of the two-page Board of Immigration Appeals decision, just before finding that what the Board of Immigration Appeals found to be distinctly unpleasant harm, they did have essentially a rule. They had a rule, and in that rule section, they pointed to this court's case law. And so while maybe this, you know, these circumstances are not the exact same as Serbu from this court, we would ask the court to consider that the same error has been made here. While, you know, the immigration judge did not use, you know, the wrong standard to say that, you know, there was not evidence to compel a finding of past persecution, pointing to that case law from the circuit inherently used that higher standard, the substantial evidence standard, which we believe is an error, and, you know, demands remand, as this court held in Serbu. And to underscore this court's holding in Serbu, the court specifically stated that the immigration judge and board turned the system upside down if they used this court's deferential decisions as setting new lower floors for human cruelty that our immigration law says must be tolerated without granting asylum. We think that's instructive. I understand that, but I mean, I'm just, so they've given examples in this paragraph that you're referring us to, page 2 of their opinion, which seems to be page 9 of our, of the appendix to your brief. So we at least have examples of conduct that didn't compel a finding of past persecution, the infamous Dandan case, which comes up all the time, as well as these others. But I just wonder, did the board just miss a sentence? You know, we've assessed this on our own, but our assessment is consistent with findings that, you know, it was within our discretion to come to this conclusion in other instances as well. And that's our main point, Your Honor, that specifically the Board of Immigration Appeals did not put that sentence in there, so we have no way to speculate as to what the board was thinking, and that's why remand is warranted here. As in that two-page decision from the Board of Immigration Appeals, it has that rule section and then turns to the persecution or the claim persecution by a petitioner. And we do believe that substantial evidence compels a finding of past persecution, that petitioner suffered two incidents of arrests, detention, beatings, to the point of leaving marks on his body. And the immigration judge at no point during the merits hearing followed up with questioning as to what were those marks, how big were those marks. And we do believe that the immigration judge committed error as well. Petitioner was appearing pro se at that time. So can I ask you about the record? It seems that this record is very thin about what's been going on in Cameroon, and more lawyering of it, basically. There could have been more evidence before the board, but whose fault is that? I mean, wasn't it his burden to inform the board of the violent nature of the linguistic division in Cameroon? Your Honor, we would underscore the fact that the immigration judge and the Board of Immigration Appeals operate in agencies that are supposed to be expert agencies. They're supposed to be specialists. This is a fundamental issue that someone appearing pro se, who's in detention, does not have access, as someone may, outside of detention. And so we believe that that's a clear error that the immigration judge and the Board of Immigration Appeals never once pointed to the country conditions in Cameroon, which I think it needs to be addressed. It's fundamentally fair and unfair, I guess we would say, if the immigration judge and Board of Immigration Appeals don't even assess the country conditions. And if, Your Honors, would take judicial notice of the current country conditions in Cameroon, the Francophone-Anglophone issue is essentially at a point where there is a civil war right now because of that issue. But we don't have State Department reports. I mean, I assume that would be reflected in the State Department's country reports. Correct, Your Honor. And again, we would just underscore the fact that he wasn't appearing pro se, that he didn't have access to those materials, but that the immigration judge and Board of Immigration Appeals should have pointed to that, or at least reviewed that. In not doing so, we believe that petitioner did not have a full and fair hearing. And so we would ask that the petition for review be granted and that the record be remanded. Thank you, Your Honor. All right, thanks. Ms. Conrad. Good morning. May it please the Court. My name is Dawn Conrad, and I'm here today on behalf of the U.S. Attorney General. In this case, the record does not compel the finding that petitioner suffered past persecution or has a well-founded fear of persecution in Cameroon. So there are two issues that bother me. One is this point that I was discussing with Mr. Seyfried. Just because a particular record doesn't compel a finding of persecution, past persecution, doesn't mean that the Board itself wouldn't be entitled to find past persecution. Its role is different from the role of a review in court. So it's a little troubling for the Board just to say, well, because the Court didn't think it was compelled, then it doesn't even exist at all. So that's one concern. My other concern is this problem of the Board. I mean, honestly, I feel like it was almost jaywalking. Somebody, is the Board an expert agency or not? I mean, does it know anything about what's going on in other countries around the world? Or is it just approaching every case as a tabula rasa or assuming that they're all exactly like the United States? I mean, fortunately, in the United States, we don't have a hot war over which language people speak. But that does happen sometimes. Yes, Your Honor. Well, I would, to answer your second point first, I would say that the Board is limited to the evidence that was submitted in the record. So when the Board sees something about South Sudan, does the Board approach that from the point of view that everything is a utopia there? Or what does the Board do? No, I think the Board looks at what the evidence was in the record and makes a decision. And there is the country report in this case was in the record and did not contain information regarding the Anglophile and Francophone issues. So the State Department missed the fact that there's a violent controversy between the Francophones? Well, it could be the country report at that time did not have that information in it. It was Petitioner's burden to submit, even though he was pro se. It's his burden to prove his case. So we make this impossible for people, right? We put them in detention. They're pro se. They have no library. They have no right to counsel. So we just sort of stack the deck. No, Your Honor. The IJ in this case encouraged Petitioner to submit supporting evidence. Where was he going to find it, though? Did he have computer access? Well, he had an aunt that lived in the United States, and he said he would contact her to get a letter from his mother. That's not the same as a good package of evidence to show that the violence he experienced because of his political support for the Anglophone faction was, in fact, number one, based on one of the five criteria that are acceptable under the immigration law, and number two, is plausible that this is regarded in Cameroon as a fighting word. Your Honor, he also was represented by counsel before the board. So before the board, his counsel could have submitted more country conditions evidence and moved for remand. We don't have that in this instance. So he wasn't pro se the entire way. I'm sorry. Go ahead. Conrad, you know, in terms of the prospect of future prosecution, if one credits his testimony as the board purported to do, hasn't he shown a likelihood that he will be subject to a pattern of arrests and beatings if he's returned to Cameroon? It's clear that the police view him not only as a participant in the protest, but as a leader of those protests. And they showed an ongoing interest in him even after he escaped police custody. Your Honor, we would argue that the record still does not show a well-founded fear of persecution based on objective evidence. Because there was six months in between when he was first arrested and when he was found again. He testified that they did not. He was in hiding, though, right? I'm sorry? He was in hiding, I understand. That's true. But he testified that they did not come to look for him at his grandmother's house. Did they know he was there? Maybe they were supposed to scour the country? Also, he had no really other evidence besides these two incidents. And then he was- How about the evidence on his body? Well, all that we know from his testimony is that he had skin marks. We don't know what that means. We don't know whether that could be anything from bruises to petitioner's statement in his brief that they were lasting marks is not supported by the record or his testimony. It couldn't be a bruise if it's still on his body this many months later. Yes, Your Honor. And what I'm saying is the statement that the marks are still on his body, that's not in the record. That is just counselor's argument. But the board credited his testimony. Correct. The board credited his testimony, right, that he was detained twice and escaped and that he had skin marks and that he was slapped and kicked. That's basically all we know. We don't have evidence that they still look for him in Cameroon because we don't have a statement from any of his family members. And in other cases where we see a well-founded fear of persecution, we usually have some sort of evidence that they're still looking for him from either a family member or a summons to appear. I'm sorry? I'm sorry. You know there's a lag, so it's a bit of a problem. No problem. But when I look at the board's orders to the past prosecution, it seems to me that the board was exclusively relying on this court's cases for the standard on past persecution rather than identifying and applying the standards that the board itself should apply. Don't we have to be confident that the board was properly looking to its own agency standard for persecution rather than to our much more deferential standard on judicial review of the board's findings? Yes, Your Honor, and I believe Judge Wood raised this earlier. What we believe happened in this case is the board did state the correct standard, and what the board does is the board only cites to this court's case law to support its general definition of persecution and to support its proposition that minor injuries do not rise to the level of persecution. The board looked to whether the evidence supported past persecution, and the board concluded that while his past experiences in Cameroon, while distinctly unpleasant, did not reach the level of persecution. So the board does cite these court's cases, but they're only citing them to demonstrate that minor injuries do not rise to the level of persecution, not that the board's not applying the standard that the evidence, whether the evidence compels the finding of persecution. Now the board, I'll give you the board's decision could have provided more detail, and that's frequently the case with their decisions. And the IJ, also it's important to note that the IJ in this case didn't definitely apply the correct standard, and the IJ doesn't even cite any case law and just looks at the facts of the case to determine that it did not rise to the level of persecution. So are we reviewing here both the IJ and the board rights? It's not maybe ideal, but this looks to me like one of those situations where what we are reviewing is the board's opinion, not the two. Yes, but in this case the board agreed with the IJ on that finding, so to that extent the court can review both of them. All right. If there is no further question, we respectfully ask the court to deny the petition for review. Thank you. All right. Thank you, Ms. Conrad. I'll give you a minute, Mr. Seyfried. Your Honors, we would just note that clearly this is a sympathetic case, that petitioner was appearing pro se, and I think it is clear that the Board of Immigration Appeals had many missteps in their decision, and we cannot speculate as to what the board was thinking, and I think that a remand is clearly warranted. We would also just touch on the past persecution that petitioner suffered that this court held in Santa Cova, even psychological persecution should be included in the persecution finding, and we believe that being foreclosed of supporting the English system in the government and in the school system in Cameroon is a type of persecution. The threat of harm that he suffered, and clearly the Board of Immigration Appeals mischaracterizes all of these incidences and circumstances that petitioner suffered as just unpleasant, and I think that that just shows that the Board of Immigration Appeals didn't fully comprehend the totality of the circumstances. We do believe that petitioner being in detention, he was at a disadvantage, and we would note that clearly petitioner did not wait around to see what happened in Cameroon. Clearly what he suffered was barbaric, and if we put ourselves into his shoes at 21 years old, being subjected to these incidents, I do believe that substantial evidence does compel a finding of persecution. Thank you, Your Honors. All right, thank you very much. Thanks to both counsel. We will take this case under advisement, and the court will take a brief recess.